UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE SUBPOENA TO SCHAEFFLER GROUP USA, INC<br><br>GE RENEWABLES NORTH AMERICA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SKF USA INC,<br><br>Defendant. | ) | Case No. |

**<u>BRIEF IN SUPPORT OF NONPARTY SCHAEFFLER GROUP USA, INC.'S MOTION TO QUASH IN ITS ENTIRETY</u>**

Nonparty Schaeffler Group USA, Inc. ("Schaeffler") moves to quash Defendant SKF USA Inc.'s ("SKF") October 6, 2026 subpoena (the "Subpoena") in its entirety (the "Motion").[1]

## INTRODUCTION

SKF waited until the final weeks of a discovery period that had run more than a year, then served its nonparty competitor with a subpoena demanding twelve corporate-testimony topics, fourteen document requests, and eleven years of Schaeffler's customer communications, engineering, research, and failure investigations—much of which includes trade secrets. (Ex. 1 at 4–7, 13–15.) It did so after GE Renewables North America, LLC ("GERNA") had already produced supplier-related documents in the underlying action, and it subpoenaed two other

[1] Schaeffler moves pursuant to Federal Rules of Civil Procedure 26(c) and 45, and the parties' October 1, 2026 agreement extending Schaeffler's deadlines.

suppliers the same day. GERNA correctly objected that SKF was demanding "an entire case's worth of documents as if they were parties to the lawsuit." (Ex. 3 at 1–2.)

Schaeffler timely objected to the Subpoena and attempted to resolve the dispute without judicial intervention, including by requesting that SKF postpone the October 27 deposition pending resolution of this Motion. SKF has agreed to adjourn the October 27 deposition to December 3, 2026, with the filing of this Motion. (Subpoena, Ex. 1 at 1; Ex. 3 at 1–2; Ex. 7.)

Everything SKF seeks falls into one of two categories. One category is information about how bearings performed in GERNA's turbines: failure rates, service and warranty records, replacement history, specifications, supplier qualifications, and the communications among GERNA, SKF, and GERNA's suppliers. GERNA has all that information and has produced supplier documents already. If SKF believes that GERNA's production is somehow deficient, Rule 45 is not the remedy. Instead, the proper vehicle would be to compel GERNA in the Northern District of Georgia. That path is binary: If the Georgia court orders production, SKF can obtain what it claims to need from a party. And if that court denies SKF's motion, it will have determined that the material is *not* proportional or relevant discovery in that case. Either way, SKF has no valid basis to seek this discovery from Schaeffler.

The other category SKF seeks is what only Schaeffler has: its root-cause analyses, its proprietary Triondur C coating technology, its reliability studies, and its industry-wide research. (Ex. 6 at 5–7.) None of that informs whether SKF's bearings satisfied SKF's warranties to GERNA. (Ex. 5 ¶¶ 50–56, 62–70.) It is Schaeffler's engineering judgment about Schaeffler's products—trade secrets, including what does not work—which the Uniform Trade Secrets Act expressly recognizes as protectable. Unif. Trade Secrets Act § 1 cmt. (Unif. L. Comm'n 1985). Moreover, for the research and reliability topics, it is also the analysis of an unretained expert,

which Rule 45(d)(3)(B)(ii) independently protects. And here the recipient would be Schaeffler's direct competitor.

The existing protective order does not prevent that risk: it permits disclosure of attorneys'-eyes-only material to SKF's in-house counsel and deposition witnesses without Schaeffler's consent, (Ex. 1 at 26, 28), and SKF's outside counsel represents SKF in various other matters beyond this case.[2]

The Fourth Circuit's standard is dispositive here. Nonparty discovery is subject to "[a] more demanding variant of the proportionality analysis." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). The requesting party must show that the information will "likely (not just theoretically)" provide value "over and above what the requesting party already has," and must "explain why it cannot obtain the same information, or comparable information . . . from one of the parties to the litigation." *Id*. "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs." *Id*. at 190. SKF cannot satisfy any part of that standard. What it needs, it can get from GERNA. What it cannot get from GERNA, it does not need.

## FACTUAL AND PROCEDURAL BACKGROUND

GERNA sued SKF in the Northern District of Georgia for breach of express warranties and the implied warranty of fitness for a particular purpose, alleging that SKF's bearings underperformed in GERNA's turbines. *See GE Renewables North America, LLC v. SKF USA Inc.*, No. 1:25-CV-1157-VMC (N.D. Ga.). Although GERNA alleges that other manufacturers'

---

[2] *See SKF USA Inc. v. Fifth Third Bank*, 2:2018-cv-033801 (E.D. Penn.); *White v. SKF USA, Inc. et al*, 2:2020-cv-00256 (E.D. Tenn.). *See also* Richard D. Shane, *Duane Morris LLP*, https://www.duanemorris.com/attorneys/richarddshane.html#tab_RepresentativeMatters (last visited Oct. 22, 2026) (describing representing SKF in "rolling bearings and related technologies, in a suit involving alleged construction defect, delay, and indemnification claims"); W. Michael Gradisek, *Duane Morris LLP*, https://www.duanemorris.com/attorneys/wmichaelgradisek.html#tab_RepresentativeMatters (last visited Oct. 22, 2026) (describing representing SKF in "amending and restating their defined benefit pension plans, while acting as counsel for all qualified plans and health and welfare plans").

bearings performed better, its claims turn on whether SKF satisfied its own warranty obligations to GERNA; Schaeffler's products and obligations are not at issue. (Ex. 5 at 12–17.)

SKF first subpoenaed Schaeffler and two other bearing suppliers, Timken and NTN, on September 22, 2026—weeks before the October 31 fact-discovery cutoff. GERNA objected that SKF's subpoena (1) was overbroad; (2) sought supplier information GERNA had recently produced; and (3) pursued discovery on the eve of the cutoff that SKF could have sought a year earlier. (Ex. 3 at 1–2.) The Subpoena lists twelve deposition topics—"by way of example only"—and fourteen document requests, reaching back to January 1, 2015, and extending to Schaeffler's parents, subsidiaries, and affiliates. (*Id.* at 4–8, 13-15.)

Schaeffler timely served objections on October 13, offered to confer, and asked SKF to withdraw the Subpoena or adjourn the deposition. (Ex. 2 at 1–2.) On October 15, SKF offered to narrow its document requests to four categories and to forgo the deposition—but only if Schaeffler agreed to produce documents, and while reserving the right to revisit testimony. SKF has agreed to adjourn the October 27 deposition to December 3, 2026, with the filing of this Motion. (Ex. 7.)

Schaeffler's October 13 objections carry a consequence under Rule 45 itself. Once a subpoena recipient serves a timely written objection to a document demand, the serving party may move to compel. Fed. R. Civ. P. 45(d)(2)(B)(i)–(ii). SKF has not yet done so.

## LEGAL STANDARD

This Court is the court where compliance is required because the Subpoena commands testimony and production in Charlotte, North Carolina. FED. R. CIV. P. 45(d)(3). On timely motion, the compliance court must quash or modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). The court "may" quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information," or "an

unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(i)–(ii). In those circumstances, compliance may be ordered only if the serving party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and ensures reasonable compensation. Fed. R. Civ. P. 45(d)(3)(C). Rule 26(c)(1) separately authorizes this Court to protect a deponent from annoyance, oppression, or undue burden.

## ARGUMENT

SKF's subpoena fails because it seeks information that SKF can and should obtain from GERNA—to the extent that it can convince the Georgia court that it is relevant—or is highly confidential information that SKF plainly does not need for its case. It should be quashed in its entirety.

### I. SKF Seeks Discovery From Non-Party Schaeffler That It Could Obtain—If Relevant—From GERNA.

Courts should "consider what information is available to the requesting party from other sources." *Jordan*, 921 F.3d at 189. "[T]he requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation." *Id.*

#### A. SKF's has not shown why it cannot obtain the information from the Parties.

Much of the information SKF seeks is already available from GERNA or SKF itself. As the Fourth Circuit explained, "the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation." *Jordan*, 921 F.3d at 189. Indeed, the court explained that even when a third-party email provider "might well possess [information] that would be discoverable from the

party herself," there is no reason to subpoena the nonparty if same information can be obtained "from the party directly." *Id.*

This principle strongly applies here. Notably, over half of SKF's requests and topics are for information that—to the extent that it is relevant—either GERNA or SKF would have in its possession:

| SKF's Request (corresponding deposition topic) | Already in GERNA's (or SKF's own) possession? |
|---|---|
| Req. 1 (Topic 1): Schaeffler's communications with GERNA about the purchase, performance, reliability, or failure of the bearings, including warranty claims, failure notices, and corrective-action requests. | Yes. GERNA is a party to every one of these communications. |
| Req. 2 (Topic 2): Number, type, location, date, and pre-failure operating hours of bearing failures, including summary data and tracking logs. | Yes. The alleged failures involved bearings installed in GERNA's turbines. GERNA's own service, warranty, and replacement records show how many bearings allegedly failed, where, when, and after how many operating hours. |
| Req. 3: Final specifications and drawings for the bearings delivered to GERNA. | Yes. GERNA received the specifications and drawings for the bearings it purchased. |
| Req. 4 (Topic 3): All documents and communications concerning any investigation, root-cause analysis, tear-down, or metallurgical study of bearing failures. | Yes, as to any findings Schaeffler reported to GERNA. |
| Req. 5 (Topic 4): All documents and communications in which GERNA contended a failure was a "Serial Defect." | Yes. GERNA authored these contentions. |
| Req. 8 (Topic 6): All communications between Schaeffler and SKF about mainshaft bearing failures in onshore wind turbines, regardless of manufacturer. | Yes. SKF itself is a party to every one of these communications. |
| Req. 9 (Topic 7): All documents and communications with GERNA concerning GERNA's requirement of an approximately 20-year useful life. | Yes. The requirement is GERNA's own specification, and GERNA is a party to every communication about it. |

| SKF's Request (corresponding deposition topic) | Already in GERNA's (or SKF's own) possession? |
|---|---|
| Req. 13 (Topic 12): Each claim, lawsuit, arbitration, or dispute regarding failure of the bearings, including customer, allegations, and disposition. | Yes. The request is defined by bearings GERNA purchased, so any dispute over them is GERNA's own. A dispute between Schaeffler and a different customer over a different application has no bearing on SKF's obligations to GERNA. |

GERNA is the logical source for its own communications, specifications, and turbine performance information. SKF is the logical source for its own communications with Schaeffler. And indeed, GERNA confirmed that it recently produced additional documents concerning Schaeffler and the other suppliers. (*See* Ex. 3 at 2.) Yet SKF identifies no gaps in that production or explains why obtaining the same information from Schaeffler would provide any meaningful benefit. SKF has not demonstrated why it needs to burden a nonparty competitor for information it can obtain from the parties themselves**.**

### B. Information Unique to Schaeffler Is Irrelevant to GERNA's Claims, and SKF Has No Demonstrated Need for It.

The Fourth Circuit directs district courts to consider "not just the relevance of information sought, but the requesting party's need for it." *Jordan*, 921 F.3d at 189. Here, the relevant requested information is already available from GERNA through party discovery in Georgia. And for information uniquely held by Schaeffler, SKF has not explained, and cannot explain, why it is necessary to resolve the underlying dispute. It cannot, because it is irrelevant.

GERNA's claims concern whether SKF breached its contractual and warranty obligations by supplying bearings that allegedly failed to meet GERNA's technical specifications. (*See* Ex. 5 ¶¶ 50–56, 62–70.) Yet SKF seeks extensive discovery into Schaeffler's independent products, performance, investigations, research, and commercial relationships—none of which determines whether SKF satisfied its own contractual obligations.

SKF justifies its demands by pointing to GERNA's allegation that competitors' bearings have not experienced comparable failures, (*see id*. ¶¶ 16, 32.) But GERNA's allegation concerns field performance in ***GERNA's turbines***—information GERNA observes and records. SKF can test that allegation through discovery from GERNA without burdening Schaeffler. The remaining information concerns Schaeffler's independent engineering analyses, coating research, and reliability studies, not whether SKF breached its obligations. Moreover, Rule 45(d)(3)(B)(ii) permits courts to quash subpoenas seeking unretained-expert opinions or studies unrelated to specific occurrences in dispute.

SKF's Subpoena thus seeks information either available from GERNA or SKF, or irrelevant to their dispute. The following table illustrates why the information uniquely sought from Schaeffler is unnecessary:

| **SKF's Request (corresponding deposition topic)** | **Relevant?** |
|---|---|
| Req. 4 (Topic 3): All documents and communications concerning any investigation, root-cause analysis, tear-down, or metallurgical study of bearing failures. | No, because GERNA's claims turn on whether SKF's bearings met SKF's warranties and GERNA's specifications. Why Schaeffler's bearings failed when they did is Schaeffler's engineering judgment about Schaeffler's product; it does not show whether SKF's bearings conformed. |
| Req. 6 (Topic 5): All documents and communications concerning whether DLC coating played a role in any bearing failure, including for other customers. | No. Whether Schaeffler's coating contributed to failures of Schaeffler's bearings, for GERNA or any other customer, says nothing about whether SKF's bearings met SKF's obligations. It is Schaeffler's internal analysis of its own product in other customers' applications. |
| Req. 7 (Topic 10): All documents concerning Schaeffler's proprietary Triondur C DLC coating and Schaeffler's comparative analyses of Triondur C against other coatings. | No. How Schaeffler formulates and applies its proprietary coating, and how that coating compares to others, is irrelevant to whether SKF's bearings conformed to GERNA's specifications. It is a competitor's trade-secret research and development. |

| SKF's Request (corresponding deposition topic) | Relevant? |
|---|---|
| Req. 10: All documents relating to causation of failures on the 3.X-137 bearing platform, including comparison to the 2.X-127 design and operating conditions. | No. The 3.x-137 is a different turbine platform from the 2.x platform in this case. The cause of failures on a platform not in dispute has no bearing on whether SKF's 2.x bearings met SKF's obligations to GERNA. |
| Req. 11 (Topics 8, 9, 10): All reports, studies, white papers, and presentations authored, commissioned, or reviewed by Schaeffler on (a) mainshaft bearing failures, (b) expected reliability and service life, and (c) the role of DLC coating, each regardless of manufacturer. | No. Industry-wide research "regardless of manufacturer" does not describe the SKF bearings or the GERNA turbines in dispute. Published material is equally available to SKF. Unpublished material is Schaeffler's own research, an unretained expert's study that no party requested. Fed. R. Civ. P. 45(d)(3)(B)(ii). |
| Req. 12 (Topic 11): All documents concerning any correlation, trend, pattern, or statistical analysis Schaeffler identified regarding mainshaft bearing failures, regardless of manufacturer. | No. Schaeffler's internal statistical analysis of industry failure trends "regardless of manufacturer" is Schaeffler's engineering opinion, not evidence of how SKF's bearings performed in GERNA's turbines. Same unretained-expert protection as Request 11. |
| Req. 14: Organizational chart of Schaeffler and all parent, subsidiary, affiliated, and related entities. | No. Schaeffler's corporate structure has no bearing on any claim or defense between GERNA and SKF. Its only function is to extend the subpoena to Schaeffler's affiliates. |

The Subpoena compounds these problems by reaching back to January 1, 2015, extending to Schaeffler's parents, subsidiaries, and affiliates, and requiring supplementation through trial. (Ex. 1 at 4–5, 8, 13.) But even limiting custodians, search terms, or time periods does not cure the fundamental problem: SKF has not shown why it needs a nonparty competitor's unique confidential information to defend claims arising from SKF's own contractual obligations.

## II. THE SUBPOENA IMPROPERLY SEEKS SCHAEFFLER'S PROTECTED INFORMATION.

SKF seeks Schaeffler's confidential engineering specifications and drawings (Request 3), internal investigations and root-cause analyses (Topic 3; Request 4), proprietary DLC coating technology and research (Topics 5 and 10; Requests 6–7), and technical and statistical analyses

concerning bearing failures (Topics 8–11; Requests 10–12). (Ex. 1 at 6–7, 13–15.) Schaeffler developed this information through substantial research and investment and takes measures to protect it. (Ex. 6 at 8–9, 12.) Disclosure to SKF, a direct competitor, would give SKF valuable technical knowledge it would otherwise have to develop independently, causing substantial harm to Schaeffler. (Ex. 6 at 12–13.)

Rule 45(d)(3)(B)(i) protects against this harm. And this District recognizes the heightened harm of requiring a nonparty to disclose confidential information to a competitor. *See Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 433-34 (W.D.N.C. 2005). In *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529–31 (D. Del. 2002), the court quashed a subpoena seeking a nonparty competitor's confidential information because the requesting party failed to establish a need sufficient to outweigh the burden and competitive harm. Even relevant discovery may be denied when the harm to a nonparty outweighs its benefit. *Id*. at 529.

The competitive harm is substantial. SKF seeks not merely Schaeffler's product specifications, but Schaeffler's trade secrets—the results of years of engineering research including what failed, why it failed, and which designs and coatings performed better. Requests 4 and 6 seek Schaeffler's root-cause investigations and its analyses; Request 7 seeks its proprietary Triondur C and competitive coating research; and Requests 11 and 12 seek the reliability research and statistical analyses. (Ex. 1 at 13–15; Ex. 6 at 4–5.) Knowing which design and coating choices failed in a given application is as valuable to a competitor as knowing which ones succeeded—arguably even more so, because it spares the competitor the cost of learning it. (Ex. 6 at 8–16.)

The Uniform Trade Secrets Act says exactly that: the definition "includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will **not** work could be of great value to a competitor,"

and the statutory terms "method, technique" are "intended to include the concept of 'know-how.'" Unif. Trade Secrets Act § 1 cmt. (Unif. L. Comm'n 1985) (emphasis original). SKF seeks the benefit of Schaeffler's engineering successes and failures without paying for either.

The existing protective order does not eliminate that risk. Its attorneys'-eyes-only designation extends beyond outside counsel: Paragraph 17 extends it to every person listed in Paragraphs 16(b) through 16(f), which includes "[a]ny deposition witness" whom counsel believes has knowledge of the subject matter. It also extends to in-house counsel of the Parties by an agreement between the Parties alone. (Ex. 1 at 26, 28.) Schaeffler has no say in either decision. Thus, an SKF engineer could be shown Schaeffler's root-cause during a deposition. And the risk extends to trial, where proceedings are presumptively public and the protective order does not itself guarantee that Schaeffler's confidential information will remain protected if introduced as evidence.

Nor does Paragraph 19's use restriction adequately protect Schaeffler. (Ex. 1 at 29.) SKF's outside counsel represents SKF in other matters.[3] Once a witness learns Schaeffler's proprietary coating technology and engineering findings, that knowledge cannot simply be erased when advising SKF elsewhere. SKF has offered to discuss additional protections but has proposed none. (Ex. 4 at 2–3.) And the Subpoena's carve-out for pricing and forward-looking strategy, (Ex. 1 at 12), protects none of the design, coating, or testing information at issue.

---

[3] *See SKF USA Inc. v. Fifth Third Bank*, 2:2018-cv-033801 (E.D. Penn.); *White v. SKF USA, Inc. et al*, 2:2020-cv-00256 (E.D. Tenn.). *See also* Richard D. Shane, *Duane Morris LLP*, https://www.duanemorris.com/attorneys/richarddshane.html#tab_RepresentativeMatters (last visited Oct. 22, 2026) (describing representing SKF in "rolling bearings and related technologies, in a suit involving alleged construction defect, delay, and indemnification claims"); W. Michael Gradisek, *Duane Morris LLP*, https://www.duanemorris.com/attorneys/wmichaelgradisek.html#tab_RepresentativeMatters (last visited Oct. 22, 2026) (describing representing SKF in "amending and restating their defined benefit pension plans, while acting as counsel for all qualified plans and health and welfare plans").

SKF has shown no need to justify these risks. Federal Rule 45(d)(3)(C) requires a substantial need that cannot be met without undue hardship. GERNA possesses its own communications, specifications, and supplier information and recently produced additional supplier-related documents. (Ex. 3 at 2.) SKF identifies no deficiency in that production or explains why Schaeffler's confidential internal records are necessary to defend GERNA's claims. The mere fact that Schaeffler possesses unique information does not entitle SKF to it.

SKF has not established a need sufficient to outweigh the competitive harm of exposing a nonparty competitor's confidential technology. The Subpoena should be quashed.

## III. SKF'S SUBPOENA FAILS FOR ADDITIONAL REASONS.

### A. The corporate deposition imposes substantial burdens.

SKF's Subpoena requires Schaeffler to prepare corporate representative(s) to testify about more than a decade of communications, internal reports, technical studies, and investigations. This is no ordinary deposition. Compliance requires Schaeffler to locate and review extensive records, consult employees across multiple departments, and prepare witnesses to testify on matters beyond their personal knowledge. (Ex. 1 at 1, 6–7; Ex. 1 at 6–13. Ex. 6 at 17–25.)

The burden is compounded by SKF's instruction that its twelve deposition topics are merely examples, effectively demanding that Schaeffler prepare for subjects SKF has not even identified. (Ex. 1 at 5–7.) Rule 30(b)(6) requires topics to be described with reasonable particularity, not an open-ended inquiry into a nonparty's business.

SKF also demands this extensive preparation on an unreasonable timetable. Despite having more than a year to pursue discovery from GERNA, SKF waited until shortly before the October 31, 2026 fact-discovery deadline to subpoena Schaeffler. Even GERNA objected that SKF was

demanding from nonparties discovery comparable to what the parties spent more than a year conducting. (Ex. 3 at 2.)

SKF cannot compress a year's worth of discovery into a few weeks and shift that burden onto a nonparty competitor. The preparation required, combined with the compressed deadline and open-ended topics, further supports quashing the Subpoena.

**B. SKF's conditional narrowing does not cure the burden demanded.**

SKF's proposal to narrow the Subpoena does not resolve Schaeffler's objections. Although SKF offers shorter time periods, three custodians, and conferring on search terms, it has not withdrawn or narrowed its twelve topics. Instead, SKF conditions withdrawing the deposition on Schaeffler agreeing to produce documents and reserves the right to enforce the original Subpoena. (Ex. 4 at 2–3.)

Nor does the proposal resolve Schaeffler's principal document objections. SKF's narrow requests still seek documents that are either (1) in GERNA's possession or (2) highly confidential information that SKF plainly does not need for its case.

| SKF's Request | Already in GERNA's (or SKF's own) possession? Relevant? |
| --- | --- |
| Req. 1: Communications with GE concerning the failure or replacement of Schaeffler mainshaft bearings with DLC-coated rollers for the 2.x turbine platform | Yes. GERNA is a party to every one of these communications.<br><br>No, because GERNA's claims turn on whether SKF's bearings met SKF's warranties and GERNA's specifications. Whether Schaeffler's bearings failed when they did is Schaeffler's engineering judgment about Schaeffler's product; it does not show whether SKF's bearings conformed. |

| SKF's Request | Already in GERNA's (or SKF's own) possession? Relevant? |
|---|---|
| Req. 2: Internal communications and reports concerning failures of Schaeffler mainshaft bearings with DLC-coated rollers for the 2.x turbine platform, including failure analyses, root-cause analyses, and tear-down and metallurgical reports. | No.<br><br>No, because GERNA's claims turn on whether SKF's bearings met SKF's warranties and GERNA's specifications. Why Schaeffler's bearings failed when they did is Schaeffler's engineering judgment about Schaeffler's product; it does not show whether SKF's bearings conformed. |
| Req. 3: Technical specifications and technical documentation for the Schaeffler mainshaft bearings with DLC-coated rollers supplied for the GE 2.x turbine platform | Yes. GERNA is in possession of any technical specifications and technical documentation it requires, including those specifications Schaeffler provided.<br><br>No, because GERNA's claims turn on whether SKF's bearings met SKF's warranties and GERNA's specifications. Why Schaeffler's bearings failed when they did is Schaeffler's engineering judgment about Schaeffler's product; it does not show whether SKF's bearings conformed. |
| Req. 4: Documents concerning any third-party approvals or qualifications of those Schaeffler bearings, including qualification by GE and any certification or approval by independent bodies. | Yes. GERNA is in possession of any qualifications of Schaeffler bearings. Third-party approvals are available from those parties.<br><br>No. Whether Schaeffler bearings conform to GERNA or a third-party's certification does not show whether SKF's bearings conformed. |

In sum, Category 1 still duplicates GERNA communications. Category 2 broadly seeks protected confidential information and trade secrets, including internal failure reports and communications. Category 3 seeks broad "technical documentation" without limitation, and any alleged relevant information, GERNA should have. And Category 4 seeks qualifications and approvals that should be available from GERNA. (Ex. 4 at 2-3.)

Narrowing an improper subpoena does not make it proper**.** SKF's proposal still leaves Schaeffler's fundamental objections, as explained above, unresolved and does not justify imposing

these burdens on a nonparty competitor. Quashing the subpoena in its entirety, rather than modifying it, is the appropriate relief.

## CONCLUSION

Schaeffler respectfully requests an order quashing SKF's October 6, 2026, subpoena in its entirety, including all twelve deposition topics and fourteen document requests. Only in the alternative, the Court should stay the October 27 deposition and all further compliance.

Dated: October 23, 2026.

Respectfully submitted,

/s/Jennifer Routh____________
Jennifer Routh (NC Bar # 47146)
McDermott Will & Schulte LLP
500 North Capital Street, NW
Washington, DC 20001-1531
Tel: (202) 756-8165
jrouth@mcdermottlaw.com

Richard Salgado *(Pro hac vice forthcoming)*
McDermott Will & Schulte LLP
2801 North Harwood Street, Suite 2600
Dallas, TX 75201
Tel: (214) 210-2797
richard.salgado@mcdermottlaw.com

Attorneys for Non-Pary Schaeffler Group
USA, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I served a true and correct copy of this document upon counsel of record via electronic mail as follows:

Christopher D. Kanne
Georgia Bar No. 627081
Kathryn M. White
Georgia Bar No. 528556
Duane Morris LLP
1075 Peachtree Street NE, Suite 1700
Atlanta, GA 30309
Telephone: +1 404 253-6900
CDKanne@duanemorris.com
Kmwhite@duanemorris.com

*Attorneys for Defendants*

E. Allen Page
Tiana S. Mykkeltvedt
Bondurant Mixson & Elmore LLP
1201 West Peachtree Street NW, Suite 2900
Atlanta, GA 30309
Telephone: 404 881-4100
page@bmelaw.com
mykkeltvedt@bme.com

*Attorneys for Plaintiffs*

/s/ *Jennifer Routh*
Jennifer Routh